UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA
PHOENIX DIVISION

BRENDA PETERS AND LUKE PETERS,

    Plaintiffs,

v.

DEBTBLUE, LLC,

    Defendant.

Case No.

## COMPLAINT

**NOW COMES** BRENDA PETERS AND LUKE PETERS ("Plaintiffs"), by and through the undersigned counsel, complaining of DEBTBLUE, LLC ("Defendant"), as follows:

## NATURE OF ACTION

1. Plaintiffs bring this action seeking redress for violations of the Credit Repair Organizations Act ("CROA"), 15 U.S.C. § 1679 *et seq.*, the Missouri Credit Services Organizations Act ("MCSOA"), MO. Stat. § 407.635 *et seq.*, the Missouri Merchandising Practices Act ("MMPA"), MO. Stat. § 407.010 et seq., breach of contract, and breach of fiduciary duty.

## JURISDICTION AND VENUE

1. Subject matter jurisdiction is conferred upon this Court by the CROA and 28 U.S.C. §§ 1331 and 1337, as the action arises under the laws of the United States.

2. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a).

1

3.  Venue is proper in this Court pursuant to 28. U.S.C. § 1391 because Defendant resides in the District of Arizona.

## PARTIES

4.  Plaintiffs are natural persons and consumers, over 18 years-of-age, residing in Independence, Missouri.

5.  Defendant is a credit repair organization claiming to help consumers achieve financial stability with their offerings designed to assist consumers with "get[ting] out of debt in a shorter amount of time"[1] and enjoying improved credit. Defendant is a limited liability company which maintains its principal place of business at 60 East Rio Salado Parkway, Suite 900, Tempe Arizona 85281.

## FACTUAL ALLEGATIONS

6.  In early 2022, Plaintiffs were facing financial difficulties and had a number of debts prompting them to begin looking for companies who may be able to assist them in maintaining their creditworthiness and resolving their financial obligations.

7.  Subsequently thereafter, Plaintiffs discovered Defendant through its representation that it could help consumers resolve their financial obligations by negotiating with creditors to reduce their outstanding debts and improving their credit.

8.  Plaintiffs spoke with Defendant and Defendant's agent represented to Plaintiffs that it would be able to: (1) resolve Plaintiffs' financial obligations for a significant discount by negotiating with Plaintiffs' creditors; and (2) improve Plaintiffs' credit scores.

---

[1] https://debtblue.com/debt-relief-options/ (Last visited December 16, 2024).

9. Defendant further represented to Plaintiffs that all they would need to do is make monthly payments over a certain period of time and that Defendant would utilize the payments to expeditiously resolve Plaintiffs' enrolled debts.

10. On May 19, 2022, having relied on Defendant's representations, Plaintiffs formally enrolled various debts into Defendant's debt settlement programs by entering into a contract with Defendant.

11. Specifically, Plaintiffs enrolled a total debt amount of approximately $13,262.

12. Pursuant to the contract, Plaintiffs were obligated to make monthly payments of approximately $307.92.

13. Plaintiffs proceeded to make their monthly payments to Defendant in a timely manner.

14. During the enrollment period, Plaintiffs were repeatedly informed that Defendant was actively communicating with their enrolled creditors to settle outstanding debts.

15. Despite Defendant's assurances, Defendant failed to resolve Plaintiffs' debts as expeditiously as Defendant represented it would.

16. Despite Defendant's representations, Plaintiffs' credit scores did not improve.

17. Plaintiffs signed up for Defendant's debt settlement and credit improvement services based on its representations that it would negotiate and settle their outstanding debts and remove settled accounts from their consumer credit reports.

18. Throughout its dealings with Plaintiffs, Defendant deceptively and misleadingly strung Plaintiffs along, telling them what they wanted to hear in order for them to keep making payments, only to turn around and fail to deliver on the promises and representations that induced Plaintiffs' continued participation in Defendant's debt settlement program.

19. Furthermore, Defendant repeatedly informed Plaintiffs that it was working on negotiating settlements with their creditors on their behalf.

20. However, Defendant chronically failed to engage the vast majority of Plaintiffs' creditors in settlement discussions, which resulted in Plaintiffs' creditors hounding Plaintiffs for payments.

21. Despite Plaintiffs paying in no less than $6,000 into Defendant's program, Defendant failed to meaningfully (1) engage Plaintiffs' creditors in settlement discussion; (2) resolve Plaintiffs' debts, or (3) improve Plaintiffs' credit scores.

22. As a result of Defendant's inaction, Plaintiffs' creditors continued to hound Plaintiffs through harassing collection calls and other collection activity.

23. After making steady payments over the course of several years, Plaintiffs were frustrated to discover that Defendant had failed to address one of their enrolled debts.

24. In or around June 2021, Plaintiffs grew tired of making monthly deposits with no progress and instead opted to remove the creditor from the program, eventually resolving the account on their own.

25. Upon removing the final account from their program, Plaintiffs were informed by Defendant that they had "graduated," further representing that Plaintiffs' enrolled debts were resolved.

26. Several months later, Plaintiffs were contacted by a creditor whose account they had enrolled in Defendant's program and which Defendant purportedly resolved on their behalf.

27. Plaintiffs were shocked to learn that Defendant had missed a payment under the terms of the settlement agreement and that Plaintiffs would now be required to pay the full amount of the debt on their own to resolve the account.

28. Plaintiffs suffered significant damages as result of Defendant's misrepresentations and omissions, including: financial losses, emotional distress, aggravation, mental anguish, decreased credit score.

29. Simply put, Plaintiffs found themselves in a much worse financial position after enrolling in Defendant's "debt settlement" program.

### COUNT I – VIOLATIONS OF THE CREDIT REPAIR ORGANIZATIONS ACT

30. Plaintiffs repeat and reallege all preceding paragraphs as though fully set forth herein.

31. Plaintiffs are "consumers" as defined by 15 U.S.C. § 1679a(1) of the CROA because they are individuals that sought and obtained credit repair services.

32. Defendant is a "credit repair organization" as defined by §1679a(3) of the CROA, as it is a person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of improving a consumer's credit, credit history, or credit rating, or providing assistance to any consumer with regard to any activity or service for the purpose of improving a consumer's credit.

   a. **Violations of CROA § 1679b(a)(3) and (a)(4)**

33. The CROA, pursuant to 15 U.S.C. § 1679b(a)(3) prohibits any person from "mak[ing] or us[ing] any untrue or misleading representation of the services of the credit repair organization." Additionally, pursuant to 15 U.S.C. § 1679b(a)(4), any person is prohibited from "engag[ing], directly or indirectly, in any act, practice, or course of business that constitutes or results in the commission of, or an attempt to commit, a fraud or deception on any person in connection with the offer or sale of the services of the credit repair organization."

5

34. Defendant violated §§ 1679b(a)(3) and (4) by, *inter alia*, (1) failing to pay Plaintiffs' creditors with the funds that Plaintiffs paid into the debt settlement program; (2) failing to provide debt settlement services to the best of its ability in an effort effectuate reasonable settlements; (3) failing to promptly communicate with Plaintiffs' creditors in an effort resolve Plaintiffs' debts; (4) pocketing unearned fees and fees not authorized by the contract; and (5) putting its financial interests ahead of Plaintiffs' interests.

35. Further, Defendant violated the above referenced provisions of the CROA through its misrepresentations and deception as to the nature of the credit repair and debt management services it could provide Plaintiffs. In order to get Plaintiffs to agree to utilize Defendant's services, Defendant represented that its services would increase Plaintiffs' credit rating by managing all of Plaintiffs' enrolled debts and pay off their creditors through their monthly payments; however, Defendant completely failed to follow through on these promises or the services it represented it would perform for Plaintiffs.

    **b.**    **Violations of CROA § 1679b(b)**

36. The CROA, pursuant to 15 U.S.C. § 1679b(b), provides that "[n]o credit repair organization may charge or receive any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed."

37. Defendant violated § 1679b(b) through its charging and receiving of money for services agreed to perform before such services are fully performed. Defendant's practice of charging a monthly fee, before such services are performed, is inherently in violation of the CROA. Defendant similarly withheld sums for services it never actually performed.

    **c.**    **Violations of CROA § 1679c**

6

38. The CROA, pursuant to 15 U.S.C. § 1679c, outlines the disclosures that must be provided to consumers as well as when and how such disclosures must be provided.

39. Defendant violated the above provision of the CROA through its failure to provide the written disclosures required by the CROA in the manner required.

   **d.  Violations of CROA § 1679d**

40. The CROA, pursuant to 15 U.S.C. § 1679d, outlines various requirements for the contracts between credit repair organizations and consumers, including "a conspicuous statement in bold face type, in immediate proximity to the space reserved for the consumer's signature on the contract, which reads as follows: 'You may cancel this contract without penalty or obligation at any time before midnight of the 3rd business day after the date on which you signed the contract. See the attached notice of cancellation form for an explanation of this right.'" 15 U.S.C. § 1679d(b)(4).

41. Defendant violated § 1692d(b)(4) of the CROA through its failure to contain the required disclosure in bold face type in immediate proximity for the place reserved for Plaintiffs' signature on the contract.

42. As alleged above, Plaintiffs were harmed by Defendant's conduct.

**WHEREFORE**, Plaintiffs respectfully request the following relief:

   a.  A judgment in Plaintiffs' favor for Defendant's violations of the aforementioned sections of CROA;

   b.  An award of actual damages pursuant to 15 U.S.C. § 1679g(a)(1);

   c.  An award of punitive damages pursuant to 15 U.S.C. § 1679g(a)(2)(A);

   d.  An award of Plaintiff's attorney's fees and costs pursuant to 15 U.S.C. § 1679g(a)(3); and

  e.  Any further relief this Honorable Court finds to be just and appropriate.

## COUNT II – VIOLATIONS OF THE MISSOURI CREDIT SERVICES ORGANIZATION ACT

43. Plaintiffs repeat and reallege all preceding paragraphs as though fully set forth herein.

44. Plaintiffs are "buyers" as defined by MO. Stat. § 407.635.(1) because they are individuals who sought and obtained credit repair services.

45. Defendant is a "credit services organization" as defined by MO. Stat. § 407.637(1) because it represents that it can improve or assist in improving a buyer's credit record, history, or rating.

46. The MCSOA, pursuant to MO. Stat. § 407.638 governs prohibited activities for credit services organizations.

  **a. Violations of MCSOA § 407.638**

47. The MCSOA, pursuant to MO. Stat. § 407.638(1), provides that a credit services organization may not "[c]harge a buyer or receive from a buyer money or other valuable consideration before completing performance of all services the credit services organization has agreed to perform for the buyer...."

48. Defendant violated the above referenced provision in much the same way it violated § 1679b(b) of the CROA discussed above.

49. The MCSOA, pursuant to MO. Stat. § 407.638(3), provides that credit services organization may not "[m]ake or use a false or misleading representation in the offer or sale of the services of a credit services organization..."

50. Similarly, MO. Stat. § 407.638(4), provides that a credit services organization may not "[e]ngage, directly or indirectly, in a fraudulent or deceptive act, practice or course of business in connection with the offer or sale of the services of a credit services organization...."

51. Defendant violated the above referenced provision by advising Plaintiffs to cease all payments to their creditors and further assuring them that its services would subsequently increase their credit score. Plaintiffs detrimentally relied on Defendant's instruction as they ceased payments to their creditors and their credit scores ultimately decreased as a result of Defendant's deficient services.

52. Moreover, Defendant violated the above referenced provisions by misrepresenting the nature of its services to induce Plaintiffs' enrollment and subsequently misleading Plaintiffs throughout the duration of such services as a means of retaining their monthly payments. Defendant failed to provide Plaintiffs with the necessary assistance in resolving their outstanding debts and maintain quality creditworthiness after assuring Plaintiffs it would provide the same.

53. Defendant's misleading conduct is against public policy because it created the false impression that Defendant was handling their financial and credit records properly while the consumer believes Defendant has their best interest.

54. Upon information and belief, Defendant systematically engages in misleading and deceptive practices, as described herein, in an effort to maximize profits at the expense of Missouri consumers.

55. As pled above, Plaintiffs were harmed by Defendant's conduct.

**WHEREFORE**, Plaintiffs, Brenda Peters and Luke Peters, respectfully request that this Honorable Court enter judgment in their favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the Missouri Credit Service Organization Act;

b. Awarding Plaintiffs actual damages pursuant to MO. Stat. § 407.644;

c. Awarding Plaintiffs punitive damages pursuant to MO. Stat. § 407.644;

d. Awarding Plaintiffs' costs and reasonable attorney fees, pursuant to MO. Stat. § 407.644; and

e. Awarding any other relief as this Honorable Court deems just and appropriate.

### COUNT III – VIOLATIONS OF THE MISSOURI MERCHANDISING PRACTICES ACT

56. Plaintiffs repeat and reallege all preceding paragraphs as though fully set forth herein.

57. Plaintiffs are "person[s]" as defined by MO. Rev. Stat. § 407.010(5) because they are natural people.

58. Defendant is a "person" as defined by MO. Rev. Stat. § 407.010(5) because it is a corporation.

59. Defendant's debt settlement services constitute "merchandise" under the MMPA, as MO. Rev. Stat. § 407.010(4) broadly defines the term to include "any objects, wares, goods, commodities, intangibles, real estate or services."

60. The MMPA, pursuant to MO. Stat. § 407.020(1), broadly prohibits "[d]eception, fraud, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise…"

61. Defendant violated MO. Stat. § 407.020(1) by, *inter alia*, unfairly and deceptively (1) failing to pay Plaintiffs' creditors with the funds that Plaintiffs paid into the debt settlement program; (2) failing to provide debt settlement services to the best of its ability in an effort

effectuate reasonable settlements; (3) failing to promptly communicate with Plaintiffs' creditors in an effort resolve Plaintiffs' debts; (4) pocketing unearned fees and fees not authorized by the contract; and (5) putting its financial interests ahead of Plaintiffs' interests.

62. Defendant further violated MO. Stat. § 407.020(1) by implicitly and/or explicitly representing to Plaintiffs that its services would improve Plaintiffs' credit scores when it knew that Plaintiffs' credit scores would decrease due to missed payments.

63. Plaintiffs heavily relied on all of the aforementioned false statements to their detriment.

64. Defendant's conduct was unfair and deceptive because Defendant misled Plaintiffs into trusting that Defendant would act in their best interests and resolve their debts in a timely fashion.

65. Upon information and belief, it is Defendant's business practice to mislead consumers into believing that their debt would be promptly resolved and that their credit scores would improve.

66. As pled above, Plaintiffs were harmed by Defendant's conduct.

**WHEREFORE**, Plaintiffs respectfully request the following relief:

a. A judgment in favor of Plaintiffs for Defendant's violations of the Missouri Merchandising Practices Act;

b. An award of actual damages pursuant Mo. Rev. Stat. § 407.025(1);

c. An award of punitive damages pursuant to Mo. Rev. Stat. § 407.025(1);

d. An award of Plaintiffs' reasonable attorney's fees and costs; and,

e. Any further relief this Honorable Court deems just and appropriate.

## **COUNT IV – BREACH OF CONTRACT**

67. Plaintiffs repeat and reallege all preceding paragraphs as though fully set forth herein.

68. The contract for debt settlement services between Plaintiffs and Defendant is a valid and enforceable contract.

69. The elements of breach of contract are (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation.

70. Defendant breached its contract with Plaintiffs by, *inter alia*, (1) failing to pay Plaintiffs' creditors with the funds that Plaintiffs paid into the debt settlement program; (2) failing to provide debt settlement services to the best of its ability in an effort effectuate reasonable settlements; (3) failing to promptly communicate with Plaintiffs' creditors in an effort resolve Plaintiffs' debts; (4) pocketing unearned fees and fees not authorized by the contract; and (5) putting its financial interests ahead of Plaintiffs' interests.

71. As set forth above, Plaintiffs suffered damages as a result of Defendant's breach of contract.

**WHEREFORE**, Plaintiffs respectfully request that this Honorable Court enter judgment in their favor as follows:

    a.    Declaring that Defendant breached the underlying contract;

    b.    Awarding Plaintiffs actual damages;

    c.    Awarding Plaintiffs punitive damages; and,

    d.    Awarding any other relief as this Honorable Court deems just and appropriate.

**COUNT V – BREACH OF FIDUCIARY DUTY**

72. Plaintiffs restate and reallege all previous paragraphs as though fully set forth herein.

73. Defendant owed Plaintiffs a fiduciary duty arising out of the nature of this relationship.

74. Defendant owed Plaintiffs a fiduciary duty because Plaintiffs reposed a special confidence in Defendant and Defendant was bound to act in good faith and with due regard of Plaintiffs.

75. Specifically, Plaintiffs entrusted Defendant with their money and to use their money in a responsible manner to settle their debts.

76. Defendant breached its fiduciary duty to Plaintiffs by, *inter alia*, (1) failing to pay Plaintiffs' creditors with the funds that Plaintiffs paid into the debt settlement program; (2) failing to provide debt settlement services to the best of its ability in an effort effectuate reasonable settlements; (3) failing to communicate with Plaintiffs' creditors in an effort resolve Plaintiffs' debts; (4) pocketing unearned fees and fees not authorized by the contract; and (5) putting its financial interests ahead of the interests of Plaintiffs.

77. As set forth above, Plaintiffs suffered damages as a result of Defendant's conduct.

**WHEREFORE**, Plaintiffs respectfully request the following relief:

a. A judgment in Plaintiffs' favor for breach of fiduciary duty;

b. Awarding Plaintiffs actual damages;

c. Award Plaintiffs punitive damages;

d. Award Plaintiffs reasonable attorney's fees and costs;

e. Awarding any other relief as this Honorable Court deems just and appropriate.

Dated: February 21, 2025                                         Respectfully submitted,

                                                                 */s/ Mohammed O. Badwan*
                                                                 Mohammed O. Badwan, Esq.
                                                                 *Counsel for Plaintiffs*
                                                                 Sulaiman Law Group, Ltd.
                                                                 2500 South Highland Ave.
                                                                 Suite 200
                                                                 Lombard, Illinois 60148
                                                                 (630) 575-8181 (phone)
                                                                 (630) 575-8188 (fax)
                                                                 mbadwan@sulaimanlaw.com